UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZHONGLE CHEN, *on behalf of himself and on behalf of others similarly situated*, | |
| **Plaintiff,** | 18 CV 7413 (PMH) (LMS) |
| - against - | **DECISION AND ORDER** |
| KICHO CORPORATION d/b/a Kicho Japanese Fusion, LIAN HUA CORP. d/b/a Kicho Japanese Fusion, and JIN CHUN CHEN, | |
| **Defendants.** | |

THE HONORABLE LISA MARGARET SMITH, U.S.M.J.[1]

Plaintiff Zhongle Chen ("Chen"), on behalf of himself and others similarly situated,

brings this action alleging violations of the Fair Labor Standards Act ("FLSA") and New York

Labor Law ("NYLL") against Defendants Kicho Corporation ("Kicho Corp.") doing business as

---

[1] On February 14, 2019, the Honorable Nelson S. Román referred this matter to the undersigned for general pre-trial supervision, including resolution of non-dispositive pre-trial motions. ECF No. 14. On April 3, 2020, this case was reassigned to the Hononrable Philip M. Halpern. Notice of Case Reassignment on 04/03/2020. Although not raised as an issue by the parties, the Court notes that a magistrate judge has the authority to order the relief sought in this motion and need not issue a Report and Recommendation. While a magistrate judge does not have authority "to permit maintenance of a class action" absent consent by the parties or a referral by the district judge (28 U.S.C. § 636(b)(1)(A)), Plaintiffs' motion does not seek to maintain a class action under Fed. R. Civ. P. 23. Rather, Plaintiffs only seek preliminary approval for service of a collective action notice pursuant to the FLSA, under which the standard for granting approval is far more lenient, and materially different, than the standard for granting class certification under Fed. R. Civ. P. 23. See Mazur v. Olek Lejbzon & Co., No. 05 Civ 2194 (RMB)(DF), 2005 U.S. Dist. LEXIS 30321, at *6 n.1 (S.D.N.Y. Nov. 30, 2005) (collecting cases); Young v. Cooper Cameron Corp., 229 F.R.D. 50 (S.D.N.Y. 2005) (motion to authorize collective action approval by Magistrate Judge Gorenstein); Bijoux v. Amerigroup New York, LLC, No. 14 Civ.3891(RJD)(VVP), 2015 U.S. Dist. LEXIS 122669, at *3 (E.D.N.Y. Sept. 15, 2015) ("While Magistrate Judge Pohorelsky styled his decision as a report and recommendation, he 'had the authority to grant conditional certification in the first instance because such a determination is a non-dispositive matter.'") (quoting McEarchen v. Urban Outfitters, Inc., No. 13 Civ.-03569 (FB)(JO), 2014 U.S. Dist. LEXIS 134093, at *1 n. 1 (E.D.N.Y. Sept. 23, 2014)).

Kicho Japanese Fusion, Lian Hua Corp. ("Lian Corp.") doing business as Kicho Japanese Fusion, and Jin Chun Chen ("Jin Chun") (collectively, "Defendants").  ECF No. 78, Second Amended Complaint ("SAC"), at 1.  As to the FLSA, Plaintiff alleges that he and all others similarly situated were not paid overtime wages for any hours worked over 40 hours in a workweek, and therefore they are entitled to recover from Defendants unpaid overtime wages, liquidated damages, prejudgment and post-judgment interest, and attorneys' fees and costs.  Id. at ¶ 3.  Plaintiff now moves this Court to grant conditional certification of a collective action on behalf of all current and former non-exempt and non-managerial employees employed by Defendants at any time from August 15, 2015, to the present, and to approve the proposed notice of this action to be provided to those current and former employees.  ECF No. 82, Notice of Motion.  For the following reasons, Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.[2]

---

[2] Plaintiff has moved for "conditional certification" of this case as a collective action.  As other courts have pointed out, in contrast to the requirements of Rule 23 pertaining to class actions, "neither the FLSA nor the Federal Rules of Civil Procedure provide for the certification of an FLSA collective action."  Tate v. WJL Equities Corp., No. 13 Civ. 8616 (JLC), 2014 U.S. Dist. LEXIS 76162, 2014 WL 2504507, at *1 n. 1 (S.D.N.Y. June 3, 2014); Diaz v. S & H Bondi's Dep't Store, Inc., No. 10 Civ. 7676 (PGG), 2012 U.S. Dist. LEXIS 5683, 2012 WL 137460, at *1 n. 1 (S.D.N.Y. Jan. 17, 2012); Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 463 n. 1 (S.D.N.Y. 2008). While Plaintiff has styled this motion as one for "conditional collective certification" and the Court will refer to it as such, it is more appropriately characterized "as a request for the Court to authorize notice to potential opt-in plaintiffs."  Diaz, 2012 U.S. Dist. LEXIS 5683, at *1 n. 1.

I.     **BACKGROUND**

**A. Factual Background**[3]

Defendants Kicho Corp. and Lian Corp. are separate corporations which each do business under the name Kicho Japanese Fusion, a restaurant located in Bedford Hills, New York.  SAC at ¶¶ 8-12.  Plaintiff alleges that Defendant Kicho Corp. holds the liquor license for Kicho Japanese Fusion and Defendant Lian Corp. holds the license to operate a food service establishment for Kicho Japanese Fusion and the bank account used to pay Kicho Japanese Fusion's employees.  Id.  at ¶¶ 29-31.  Plaintiff alleges that "[t]here was never any written sale of assets, sale of stock, sale of privilege to operate Kicho Japanese Fusion, assignment of lease, sublease, or other written agreement between [Defendant Kicho Corp.] and [Defendant Lian Corp.] nor was there any payment of money from [Defendant Lian Corp.] to [Defendant Kicho Corp.]"  Id. at ¶ 34.  Defenant Jin Chun is the sole owner of Defendants Kicho Corp. and Lian Corp. and the manager of Kicho Japanese Fusion.  Id. at ¶¶ 21, 23.  Plaintiff alleges that Defendants Kicho Corp. and Lian Corp. are alter egos of Defendant Jin Chun.  Id. at ¶ 35.

On or about April 15, 2018, Plaintiff was hired as a sushi chef at Kicho Japanese Fusion. Id. ¶¶ 7, 46.  In addition to his duties as a sushi chef, Plaintiff served as a driver shuttling fellow restaurant employees back and forth from Flushing, New York, to Bedford Hills, New York.[4] Id. at ¶ 47.  For the period of April 15, 2018, through May 31, 2018, Plaintiff worked an average of 79.75 hours per week.  Id. at ¶ 48.  From June 1, 2018, to June 30, 2018, Plaintiff worked an

---

[3] The following facts are drawn from Plaintiff's Second Amended Complaint, ECF No. 78, and Plaintiff's affidavit submitted in support of this motion, ECF No. 83-4.

[4] Plaintiff alleges that he drove "Kicho restaurant employees backand forth between Flushing and the restaurant in <u>White Plains</u> each day that he worked."  Id. at ¶ 47 (emphasis added). However, the SAC states that Kicho Japanese Fusion is located in Bedford Hills, New York, not White Plains.  Id. at ¶¶ 8, 28, 46.

average of 92.75 hours per week.  Id. at ¶ 49.  And from July 1, 2018, to July 15, 2018,

Plaintiff's last day of work, Plaintiff worked an average of 79.75 hours per week.  Id. at ¶ 50.

During his employment, Plaintiff was paid a flat rate of $800.00 per week plus $60.00 per day

for each day that he drove employees back and forth between Flushing and the restaurant.  Id. at

¶ 51.[5]

 Plaintiff alleges that while he was working at Kicho Japanese Fusion, there were six other

employees: two waitresses (one waitress left and was replaced during Plaintiff's employment, for

a total of three waitresses with whom Plaintiff interacted), two kitchen workers, his boss's[6]

father, and his boss's mother.  ECF No. 83-4, Pl. Affidavit ("Pl. Aff."), at ¶ 20.  During his

employment, Plaitiff alleges that he befriended some of his co-workers, including Nancy (a

waitress), Nicki (a waitress), A Jie (a waitress), Lao Mo-Male[7] (a fry wok), and Lao Mo-Female

(an oil wok).  Id. at ¶ 22.  Plaintiff alleges that he rode in the company car with Nancy every day,

until she quit in June 2018 to move to California, and presumably this is how he learned Nancy's

work schedule.  Id. at ¶¶ 26, 29.  Plaintiff alleges that in total Nancy worked 53.5 hours per

week.  Id. at ¶ 28.  Nancy told Plaintiff that she was paid $120.00 per day.  Id. at ¶ 29.  Plaintiff

---

[5] The Court is concerned by the presence of several discrepancies between Plaintiff Chen's Affidavit and the allegations in the Second Amended Complaint (and discrepancies within the Second Amended Complaint).  Such discrepancies include the number of hours worked each day, the number of days worked, the total number of hours worked per week, the dates for which Plaintiff Chen was compensated, and the amount of compensation.  Compare Pl. Aff. at ¶¶ 4-7 with SAC at ¶¶ 48-51.  The Court will rely on the allegations in Plaintiff's Second Amended Complaint, as the allegations in the Affidavit appear to not have been amended to reflect the corrections made to Second Amended Complaint.

[6] Plaintiff does not name his "boss" in the affidavit or confirm whether he is referring to Defendant Jin Chun.

[7] Plaintiff does not know the names of the kitchen workers and refers to them as "Lao Mo" (one male and one female, hereinafter "Lao Mo-Male" and "Lao Mo-Female").  Id. at ¶ 43.

asserts that Nancy was from Shanghai, China, but does not address what language(s) Nancy speaks. Id. at ¶ 25.

Plaintiff alleges that Nicki started working at Kicho Japanese Fusion in June 2018 when Nancy left and continued beyond Plaintiff's employment. Id. at ¶ 32. Nicki is from Malaysia and speaks Chinese[8] and English. Id. at 31. Plaintiff does not specifically allege how he learned Nicki's work schedule, which he lists by day and compiles for a total 53.5 hours per week, but the Court assumes that Plaintiff learned this from serving as a driver for the restaurant. Id. at ¶ 34. Plaintiff alleges that A Jie, another waitress, told him that Nicki made $120.00 per day. Id. at ¶¶ 35, 36. Plaintiff chatted with A Jie frequently. Id. at ¶ 42. Plaintiff alleges that A Jie worked a total of 54 hours per week. Id. at ¶ 41. Plaintiff asserts that A Jie told Plaintiff that she was paid $140.00 per day. Id. at ¶ 42. A Jie is also Malaysian and speaks Chinese and English. Id. at ¶ 38.

Plaintiff alleges that A Jie told him that the Mexican kitchen staff, Lao Mo-Male and Lao Mo-Female, were working for Defendants illegally. Id. at ¶ 44. Lao Mo-Male speaks English and Spanish. Id. at ¶ 46. Plaintiff alleges that he learned that Lao Mo-Male worked six days per week through his observation during a month when Plaintiff worked seven days per week. Id. at ¶ 48. In total, Lao Mo-Male worked 64 hours per week and was paid $650.00 per week. Id. at ¶¶ 49, 50. Plaintiff learned Lao Mo-Male's wage from A Jie. Id. at ¶ 50. According to Plaintiff, Lao Mo-Male continued his employment with Defendants after Plaintiff's last day. See id. at ¶ 47. Lao Mo- Female speaks mainly Spanish. Id. ¶ 52. Plaintiff alleges that he learned Lao Mo-

---

[8] Plaintiff does not specify here, or elsewhere in its briefing, whether "Chinese" as referenced throughout the affidavit, motion, and memorandum of law, is Mandarin Chinese or another Chinese dialect. The Court will assume for this decision that "Chinese" refers to Mandarin Chinese. If Plaintiff needs to correct this assumption, for example with respect to the language of the notice, Plaintiff is directed to notify the Court either orally at the next status conference or by letter.

Female's work schedule from observing who took days off during a month when Plaintiff worked seven days per week. Id. at ¶ 54. In total, Lao Mo-Female worked 64 hours per week and was paid $ 450.00 per week. Id. at ¶¶ 55, 56. Plaintiff learned Lao Mo-Female's wage from A Jie. Id. at ¶ 56. According to Plaintiff, Lao Mo-Female's employment with Defendants continued after Plaintiff's last day. See id. at ¶ 53.

Plaintiff's boss's father, A Bo, and his boss's mother, A Ma, worked at the restaurant doing miscellaneous tasks including washing dishes and making deliveries (A Bo only). Id. at ¶¶ 57, 58. Plaintiff alleges that A Bo and A Ma worked flexible hours without specific wages. Id. at ¶ 59.

Plaintiff asserts that all Defendants' employees were paid in cash. Id. at ¶ 19.

In his Second Amended Complaint, Plaintiff alleges that he was not paid overtime pay for his overtime hours, was not informed of his hourly rate, was not informed of deductions from his wages or credits toward the minimum wage, was not given a wage statement[9] reflecting the necessary information and written in Plaintiff's native Chinese, was not paid at least the New York minimum wage rate, and was not paid the New York spread-of-hours premium for shifts lasting over ten hours. SAC at ¶¶ 52-57. Plaintiff alleges that Defendants willfully and intentionally committed these FLSA and NYLL violations. Id. at ¶¶ 2, 19, 36-38, 42. Plaintiff raises seven state law claims under the NYLL on behalf of himself (and a Rule 23 class which has not been pursued) and one FLSA claim for Defendants' failure to pay overtime wages on behalf of the FLSA Collective. Id. at ¶ 58; see id. at ¶¶ 73-80.

---

[9] It is unclear from Plaintiff's allegation whether he did not receive a wage statement at all, did not receive one that included the required information, did not receive one written in Chinese, or some combination of the latter two possibilities. See id. at ¶ 55.

6

**B. Procedural History**

Plaintiff filed this action on August 15, 2018, and Defendants answered on October 30, 2019.  ECF Nos. 1, 9.  Following the parties' first appearance before the undersigned, the Court granted Defendants' request for a pre-motion conference and scheduled an evidentiary hearing on the issue of the validity of an arbitration agreement allegedly entered into between Plaintiff and Defendants.  See ECF Nos. 25-27.  The evidentiary hearing took place on May 7, 2019.  Minute Entry on 05/05/2019.  Following the hearing, the undersigned denied without prejudice Defendants request to move to compel arbitration.  ECF No. 31, Order ("It cannot be said that sufficient evidence has been presented to support a finding that the agreement to arbitrate could be proven by a preponderance of the evidence.").  Thereafter, the Court granted the parties' request that the case be referred to the Court's Mediation Program.  ECF No. 33, Mediation Referral Order.   A mediation was held but was unsuccessful.  ECF No. 35, Final Report of Mediator.

On August 8, 2019, the parties appeared before the undersigned for a status conference wherein Defendants raised the issue of whether the FLSA's gross income requirement is jurisdictional.  See Minute Entry for 08/08/2019.  The undersigned issued a schedule for letter briefs to be submitted to the Court on this issue.  Id.  Prior to the filing of the opening letter brief, Plaintiff filed a motion for conditional collective action certification, along with an affidavit and memorandum of law.  ECF Nos. 37-39.  At the next conference before the undersigned, the Court ruled from the bench on the jurisdiction issue and stated it would defer its decision on Plaintiff's motion to certify the collective action until Defendants produced certain financial information (related to establishing Defendants' gross income under the FLSA).  See Minute Entry on 09/12/2019.  At the following conference, Plaintiff's counsel informed the Court that a

new corporation may be involved in this matter.  The Court ordered that "Defendant must send [the] name of Defendant's new corporation to Plaintiff."  Minute Entry for 10/11/2019.  At a subsequent status conference held on November 6, 2011, Plaintiff sought permission to amend its complaint to include the newly discovered corporate Defendant, Lian Corp.  The Court set a briefing schedule for Plaintiff's motion to amend, which was due to be fully submitted on December 3, 2019.  Minute Entry on 11/06/2019.  Plaintiff filed its motion to amend timely, but Defendants failed to respond.  See ECF Nos. 55-57, 59-60, 63.  The Court granted Plaintiff permission to file a First Amended Complaint.  ECF No. 67, Order.

At the next conference before the undersigned held on January 10, 2020, Plaintiff sought permission to amend its motion for collective action certification in light of the amended complaint.  The Court set a briefing schedule for the motion to amend the certification motion, see Minute Entry on 01/10/2020, and directed Plaintiff to make changes to the First Amended Complaint.  Plaintiff filed its Second Amended Complaint on January 23, 2020.[10]  ECF No. 78, SAC.  As of the entry of this order, no Defendants have answered the Second Amended Complaint. [11]

---

[10] Plaintiff originally filed the Second Amended Complaint on January 17, 2020, ECF No. 74, but it was flagged as a deficient pleading.  The Court issued an order explicitly granting Plaintiff permission to file a Second Amended Complaint on January 22, 2019, which remediated the filing error.  ECF No. 77, Order.

[11] Defendant Lian Corp. has not formally appeared in this case.  Plaintiff served Lian Corp. with a copy of the Second Amended Complaint on January 30, 2020 by leaving the copy with an authorized agent in the Office of the Secretary of State for the State of New York.  ECF No. 86, Affidavit of Service.  Lian Corp. was required to answer or move against the Second Amended Complaint by February 20, 2020.  No answer has been filed on Defendant Lian Corp.'s behalf.  Plaintiff alleges in the Second Amended Complaint that Defendant Lian Corp. is owned by individual Defendant Jin Chun.  Defendant Jin Chun is represented in this action by William X. Zou, who received notice of the Second Amended Complaint via a notice of electronic filing on January 23, 2020.

On January 27, 2020, Plaintiff filed this motion to certify the collective action[12] and a proposed order seeking the following: (1) collective action status under the FLSA; (2) production[13] in Excel format of first and last names, last known addresses with apartment numbers if applicable, last known telephone numbers, last known email addresses, last known social media usernames if applicable, work location, dates of employment, and position for all current and former non-exempt and non-managerial employees employed by Defendants from August 15, 2015; (3) authorization that notice of the FSLA action be distributed to all members of the putative collective action in any relevant language, including Chinese and Spanish, via mail, email, text message, website or social media messages, chats, or posts within 21 days after Plaintiff receives the Excel spreadsheet with an affidavit certifying that the speadsheet is complete and taken from existing employment records; (4) authorization of a 90-day opt-in period beginning the day that the notice and its translations are distributed; (5) authorization for Plaintiff's counsel to publish the full opt-in notice on Plaintiff's counsel's website; (6) authorization for a short-form of the notice to be published to social media groups specifically targeting the Chinese-speaking and Spanish-speaking American immigrant worker community; (7) an order requiring Defendants to post the full notice in all relevant languages, in a conspicuous and unobstructed location in its restaurant during the entire opt-in period; (8) an order that Plaintiff publish the notice in an abbreviated form to be approved by the Court on

---

[12] The Court notes that it was expecting to receive a motion to amend and instead received the amended motion for ruling on the merits.

[13] The motion requests that Defendants be required to make this production within 21 days of the entry of this order, and the proposed order requires Defendants to make this production within 15 days. Compare ECF No. 82 ¶ 2 with ECF No. 83-3 ¶ 1. The proposed order requires Defendants to include potential opt-in plaintiff's nicknames and gender, which were not included in Plaintiff's Notice of Motion. Id.

social media and by newspaper at Defendants' expense if Defendants fail to produce the

requested contact information or if more than 20 percent of notices are returned as undeliverable;

and (9) an order allowing equitable tolling of the statute of limitations for 90 days until the

expiration of the opt-in period.[14]   ECF No. 82, 83.   In support of its motion, Plaintiff filed an

Affidavit, a Memorandum of Law, and a Declaration from Plaintiff's counsel, in addition to a

proposed notice and consent form.   ECF Nos. 83, 84.   The briefing schedule required Defendants

to oppose Plaintiff's motion by February 18, 2020.   See Minute Entry on 1/10/2020.   Defendants

have not filed any response to Plaintiff's motion.   Therefore, the Court considers Plaintiff's

motion to be unopposed and this matter to be fully submitted.[15]

---

[14] The numbered requests listed here are set forth in Plaintiff's notice of motion (ECF No. 82).
The proposed order attached to Plaintiff's counsel's declaration (ECF No. 83-3) includes
additional items such as an order requiring Plaintiff to mail and email a copy of the notice and
consent "within thirty (30) days after receipt of a complete and accurate . . . [copy] of
Defendants' Excel spreadsheet, or thirty[-]six (36) days after the entry of this Order, whichever
is later," and order requiring a reminder postcard be sent via First Class mail and email to all
putative collective action members who have not submitted a consent form by half-way through
the opt-in period, and an order permitting Plaintiff's counsel to re-mail or re-email the notice to
putative collective action members when notice is returned as undeliverable.   See ECF No. 83-3.

[15] Plaintiff's reply, if any, was required to be filed by February 28, 2020.   Minute Entry on
01/10/2020.   Plaintiff filed its reply on March 6, 2020, requesting that the Court grant Plaintiff's
motion for conditional collective action certification in its entirety as unopposed.   ECF No. 87,
Reply.   On March 26, 2020, Plaintiff filed a "Notice of Plaintiff's Amended Motion for
Conditional Collective Certification."   ECF No. 90, Notice.   The document is a cover-page to the
courtesy copy of Plaintiff's January 2020 collective action motion which was delivered to the
Court on March 12, 2020.   The cover page includes a list of documents which were delivered to
the Court (ECF Nos. 82-84, 87).   On April 7, 2020, Plaintiff filed a letter requesting that the
Court grant Plaintiff's motion for conditional collective action certification in its entirety as
unopposed.   ECF No. 92, Letter.

**DISCUSSION**

I.   **APPLICABLE LEGAL PRINCIPLES**

Under the FLSA, a plaintiff may seek certification to proceed as a collective action, thus allowing other "similarly situated" employees the opportunity to join the litigation.  29 U.S.C. § 216(b); see also Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010).  "While the statute does not prescribe any procedures for approval of collective actions, section 216(b) has long been construed to grant authority to a district court to mandate that notice be given to potential plaintiffs informing them of the option to join the suit."  Garcia v. Spectrum of Creations Inc., 102 F. Supp. 3d 541, 546-47 (S.D.N.Y. 2015); see Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs.")[16]; Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of the 'opt-in' provision . . . [of] 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.") (citations omitted).  "Orders authorizing notice are sometimes referred to as orders 'certifying' a collective action, although the FLSA does not contain a certification requirement."  Garcia, 102 F. Supp. 3d at 547 (citing Myers, 624 F.3d at 555 n. 10 (2d Cir. 2010)).  "The act of 'certifying' a collective action, however, means only that this Court has 'exercise[d] . . . [its] discretionary power . . . to facilitate the sending of notice to potential class members.'"  Id.  The approval of a collective action thus amounts to a "'case

---

[16] Hoffmann-La Roche involved the parallel provision of the Age Discrimination in Employment Act, which incorporated the FLSA's enforcement provisions, including § 216(b). "Hoffmann-La Roche's interpretation of § 216(b) . . . binds us in FLSA cases as well as in ADEA cases." Myers v. Hertz Corp., 624 F.3d 537, 554 n. 9 (2d Cir. 2010).

management' tool for district courts to employ in 'appropriate cases.'"  Id. (quoting Hoffmann-La Roche, 493 U.S. at 169, 174).

The requirements of Rule 23 of the Federal Rules of Civil Procedure do not apply to the approval of a collective action.  Young, 229 F.R.D. at 54; Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66 (2013) ("Whatever significance 'conditional certification' may have in § 216(b) proceedings, it is not tantamount to class certification under Rule 23.").  Accordingly, "no showing of numerosity, typicality, commonality, and representativeness need be made." Bittencourt v. Ferrara Bakery & Café Inc., 310 F.R.D. 106, 111 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting Young, 229 F.R.D. at 54).

In this Circuit, there is a two-stage certification process for an FLSA collective action. See Martin v. Sprint/United Mgmt. Co., No. 15 Civ. 5237 (PAE), 2016 U.S. Dist. LEXIS 352, 2016 WL 30334, at *4 (S.D.N.Y. Jan. 4, 2016) (collecting cases).  "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred. Id. (quoting Myers, 624 F.3d at 555).  "Neither the FLSA nor its implementing regulations define the term 'similarly situated.'  However, courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Knox v. John Varvatos Enters. Inc., 282 F. Supp. 3d 644, 653-54 (S.D.N.Y. 2017) (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (citing cases)).  "In other words, at this preliminary stage, the focus of the inquiry 'is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.'"  Id. at 654

(quoting Young, 229 F.R.D. at 54) (citation omitted)).  "Plaintiffs' burden is minimal because the determination that the parties are similarly situated is merely a preliminary one, and that determination may be modified or reversed after discovery."  Liu v. Rong Shing, Inc., No. 12 Civ. 7136 (TPG), 2014 U.S. Dist. LEXIS 42080, 2014 WL 1244676, at *2 (S.D.N.Y. Mar. 26, 2014); Young, 229 F.R.D. at 55 (describing plaintiffs' burden as "very limited").  Accordingly, "[t]he court's limited role at this stage is simply to determine whether the plaintiff has sufficiently alleged that she and other employees were victims of a common compensation policy that violated the FLSA."  Nahar v. Dozen Bagels Co. Inc., No. 15 Civ. 1613 (ALC)(FM), 2015 U.S. Dist. LEXIS 143839, 2015 WL 6207076, at *3 (S.D.N.Y. Oct. 20, 2015) (citing Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).

While only a "modest factual showing" is required, the burden on a plaintiff "is not non-existent and the factual showing, even if modest, must still be based on some substance."  Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) (internal citations omitted); see Sanchez v. JMP Ventures, L.L.C., No. 13 Civ. 7264 (KBF), 2014 U.S. Dist. LEXIS 14980, 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (quoting Romero v. H.B. Auto. Grp., Inc., No. 11 Civ. 386 (CM), 2012 U.S. Dist. LEXIS 61151, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012) (explaining that "while a plaintiff's 'burden of proof is low, it is not non-existent [and] certification is not automatic.'") (internal citations and quotation marks omitted); Fraticelli v. MSG Holdings, L.P., No. 13 Civ. 6518 (JMF), 2014 U.S. Dist. LEXIS 63167, 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014) (citing Myers, 624 F.3d at 555).  Even at the conditional certification stage, a plaintiff's burden under § 216(b) "cannot be satisfied simply by unsupported assertions," Myers, 624 F.3d at 555 (citation omitted), or with "conclusory allegations."  Morales v. Plantworks, Inc., No. 05 Civ. 2349 (DC), 2006 U.S. Dist. LEXIS 4267,

2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (denying certification where there was no support for plaintiffs' claim that they were similarly situated to other employees other than a "conclusory allegation . . . that '[t]here are over 20 current and former employees that are similarly situated to Plaintiffs . . . .").  Instead, plaintiffs "must provide actual evidence of a factual nexus between their situation and those that they claim are similarly situated . . . ." Benavides v. Serenity Spa NY Inc., 166 F. Supp. 3d 474, 479 (S.D.N.Y. 2016) (quoting Qing Gu v. T.C. Chikurin, Inc., No 12 Civ. 2322 (SJ) (MDG), 2014 U.S. Dist. LEXIS 53813, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014)).

    "A plaintiff must meet this minimal burden, even if the motion is unopposed by the defendants." Jian Wu v. Sushi Nomado of Manhattan, Inc., No. 17 Civ. 04661 (PGG)(DF), 2019 U.S. Dist. LEXIS 127895, at *15, 2019 WL 3759126 (S.D.N.Y. Jul. 25, 2019).  "To meet this low burden, '[t]he plaintiff may adduce evidence through its own pleadings, affidavits, and declarations, including any hearsay statements contained therein.'" Djurdjevich v. Flat Rater Movers, Ltd., No. 17 Civ. 261 (AJN), 2018 U.S. Dist. LEXIS 193572, at *5, 2018 WL 5919519 (quoting Morris v. Lettire Constr. Corp., 896 F. Supp. 2d 265, 269 (S.D.N.Y. 2012)). Additionally, "[w]hen there are ambiguities in the papers seeking collective action status, the court must 'draw all inferences in favor of the [p]laintiff' at the preliminary certification stage." Nahar, 2015  U.S. Dist. LEXIS 143839, at *7 (quoting Mendoza v. Ashiya Sushi 5, Inc., No. 12 Civ. 8629 (KPF), 2013 U.S. Dist. LEXIS 132777, 2013 WL 5211839, at *4 (S.D.N.Y. Sept. 16, 2013) (quoting Jenkins v. TJX Cos. Inc., 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012)).  However, the Court may not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  Lynch, 491 F. Supp. 2d at 368; Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) ("In ascertaining whether potential opt-in

plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims."); see also Hoffmann-La Roche, 493 U.S. at 174 ("[T]rial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.").

Thus, at the first stage, "[t]he relevant issue is not whether the named plaintiff and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA."  Jeong Woo Kim, 985 F. Supp. 2d 439, 445 (S.D.N.Y. 2013) (citing Raniere v. Citigroup, Inc., 827 F. Supp. 2d 294, 323 (S.D.N.Y. 2011)); Hoffmann, 982 F. Supp. at 261.  Courts have frequently found a single affidavit to be adequate at this stage, so long as it is sufficiently detailed about the "plaintiff's observations, conversations and experiences involving similarly situated employees."  Murray v. City of New York, No. 16 Civ. 8072 (PKC), 2017 U.S. Dist. LEXIS 130594, 2017 WL 3531552, at *5 (S.D.N.Y. Aug. 16, 2017).  See, e.g., Romero v. La Revise Assocs., LLC, 968 F. Supp. 2d 639, 646 (S.D.N.Y. 2013) ("The affidavit of a plaintiff attesting to the existence of similarly situated plaintiffs is sufficient for the purposes of a motion to approve a collective action."); Cheng Chung Liang v. J.C. Broadway Rest., Inc., 2013 U.S. Dist. LEXIS 73976, 2013 WL 2284882, at *2-3 (S.D.N.Y. May 23, 2013) ("For the purposes of this motion, . . . plaintiffs' evidence—in the form of [one employee's] affidavit—is sufficient to establish that . . . there may be class members with whom he is similarly situated."); Kim, 985 F. Supp. 2d at 445-46 ("Indeed, the burden is so low that even one or two affidavits establishing the common plan may suffice.");  Hernandez v. Bare Burger Dio Inc., No. 12 Civ. 7794 (RWS), 2013 U.S. Dist. LEXIS 89254, at *7, 2013 Wl 3199292 (S.D.N.Y. June 25, 2013) ("[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of

one plaintiff's affidavit."); <u>Cohen v. Gerson Lehrman Grp., Inc.</u>, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) (two affidavits).

   "In the second stage, which occurs after discovery when the Court has a more developed record, the named plaintiffs must prove that the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." <u>Benavides</u>, 166 F. Supp. 3d at 479 (internal quotations omitted).  "Once notice has been sent to the potential opt-in plaintiffs and after discovery closes, the court may entertain a defendant's motion to de-certify the action. This second stage of the process involves a 'more stringent factual determination,'" <u>Nahar</u>, 2015 U.S. Dist. LEXIS 143839, at *7-8 (quoting <u>Lynch</u>, 491 F. Supp. 2d at 368), "which requires the court, 'on a fuller record, [to] determine whether a [collective action] may go forward [because] the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs[.]'" <u>Id.</u> (quoting <u>Myers</u>, 624 F.3d at 555).  "If the opt-in plaintiffs are revealed not to be similarly situated, the court may decertify the class and dismiss the opt-in plaintiffs' claims without prejudice." <u>Id.</u>


## II.   **CONDITIONAL COLLECTIVE ACTION CERTIFICATION**

   Plaintiff asserts in its reply that the Court should grant the instant motion in its entirety as unopposed.  ECF No. 87, Reply.  As detailed above, Plaintiff bears the burden of showing that there exist potential opt-in plaintiffs who are similarly situated, i.e. were subject to a common employment policy that violated the FLSA.  Here, Plaintiff avers that, in addition to his work as a sushi chef, he was responsible for driving the company car to shuttle other employees between Flushing, Queens and White Plains.[17]  Pl. Aff. at ¶¶ 4-7, 16.  During those drives, two waitresses

---

[17] While the Second Amended Complaint and Plaintiff Chen's Affidavit state that Plaintiff Chen drove other employees between Flushing and the restaurant in White Plains, those documents also state that Plaintiff Chen worked at a restaurant in Bedford Hills.  The Court need not, and cannot, resolve this discrepancy.  It is enough at this stage that Plaintiff demonstrate how he

known to Plaintiff as Nancy and A Jie told Plaintiff about their salaries and the salaries of three other employees (Nicki, Lao Mo-Male, and Lao Mo-Female).[18]  Id. at ¶¶ 29, 35-36, 42, 50, 56. Plaintiff provides the approximate number of hours each employee worked and the employees' approximate work schedules.  See id. ¶ 22.  These hours are based at least in part on Plaintiff's observations and conversations with other employees.  Plaintiff  avers that he routinely worked between 72.75 and over 92.75 hours per week and was not paid overtime wages for hours he worked over 40 hours in a week.  SAC at ¶¶ 48-50.  Plaintiff asserts that Defendants treated all its restaurant employees the same way by not paying these employees for all hours worked over 40 hours per week.  Pl. Aff. at ¶ 60.  The Court finds that Plaintiff has satisfied its burden of showing that "similarly situated" individuals exist, namely Nancy, Nicki, A Jie, Lao Mo-Male, and Lao Mo-Female, and that they were "victims of a common policy or plan that violated the law," i.e. routine failure by Defendants to pay overtime wages.  Myers, 624 F.3d at 554-55 (quoting Hoffman, 982 F. Supp. at 261).

"Courts ordinarily will allow notice of a fairly broad class of employees at this stage." Gu, 2014 U.S. Dist. LEXIS 53813,, at *13; see, e.g., Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., No. 12 Civ. 265 (PAE), 2012 U.S. Dist. LEXIS 76660, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (allowing certification for all tipped employees based on plaintiff affidavit that tipped employees are similarly situated); Hanchard-James v. Brookdale Family Care Ctrs., No. 12 Civ. 1922 (BMC), 2012 U.S. Dist. LEXIS 113118, 2012 WL 3288810, at *3- *4 (E.D.N.Y. 2012) (granting certification for all current and former employees of defendant

knows that other similarly situated potential opt-in plaintiffs exist.  The Court has concluded supra that Plaintiff most likely transported employees from Flushing to the restaurant located in Bedford Hills.

[18] Plaintiff notes elsewhere in his Affidavit that he does not know exactly how much each employee was paid.  Id. ¶ 19.

who worked in the same position as plaintiff); Iglesias-Mendoza v. La Belle Farm, Inc., 239

F.R.D. 363, 368 (S.D.N.Y. 2007) (declining to limit class to employees with the same specific

job duties as plaintiff).  "However, [w]here the named plaintiff is unable to state clearly and

specifically to whom it is that she contends she is similarly situated, it is not possible for the

Court to conclude that a collective action certification is warranted."  Gu, 2014 U.S. Dist. LEXIS

53813,, at *13 (quoting Flores v. Osaka Health SPA, Inc., No. 05 Civ.962 (VM)(KNF), 2006

U.S. Dist. LEXIS 11378, 2006 WL 695675, at *3 (S.D.N.Y. 2006)) (alteration in original)

(internal quotation marks omitted).

Additionally, in the Second Circuit, courts routinely find employees similarly situated

"despite not occupying the same positions or performing the same job functions and in the same

locations, provided that they are subject to a common unlawful policy or practice."  Guaman v. 5

"M" Corp., No. 13 Civ. 03820 (LGS), 2013 U.S. Dist. LEXIS 152379, 2013 WL 5745905, at *4

(S.D.N.Y. Oct. 23, 2013) (quoting Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 390 (E.D.N.Y.

2010)) (citation omitted); accord Colozzi v. St. Joseph's Hosp. Health Ctr., 595 F. Supp. 2d 200,

207 (N.D.N.Y. 2009) (noting that "the members of the group which plaintiffs ask the court to

preliminarily certify occupy literally hundreds of job positions" does not necessarily undermine

the motion because the "similarly situated analysis . . . centers upon the features which make the

particular policy or practice unlawful")); see Lynch, 491 F. Supp. 2d at 369 (noting that "any

factual variances that may exist between the plaintiff and the putative class do not defeat

conditional class certification" because the court may later, after having the benefit of full

discovery, decertify the class or divide it into subclasses, if appropriate); Hanchard-James, 2012

U.S. Dist. LEXIS 113118, at *9-10 (explaining that defendants did not claim that the

employment policies at issue vary between "units, shifts, or Nurse Managers" and that there was

no reason for the court to presume that the policies would vary "since [the] policies are broad and general and do not appear tailored to plaintiff's particular circumstances"); Summa, 715 F. Supp. 2d at 383 (variations in positions and job functions did not prevent certification at the preliminary stage where plaintiff showed that "plaintiff and the potential plaintiffs held the same or similar positions, were subject to the same policies and were not paid the federal minimum wage and did not receive overtime compensation for hours worked in excess of 40 hours in any given week in violation of the FLSA") (internal quotation marks omitted).

In this case, limited discovery has taken place and Plaintiff relies, as he is entitled to do at this stage of the proceedings, on the pleadings and his own affidavit. Plaintiff has made the modest showing that is required at this preliminary stage; he has shown that he was subjected to certain wage and hour practices while employed by Defendants, particularly failure to pay overtime wages, and that on the basis of his observations and conversations, his experience was shared by members of the proposed collective. However, Plaintiff has not provided a sufficient showing to conclude that Plaintiff's boss's mother and father are similarly situated as Plaintiff failed to provide any wage or hour data for them. Therefore, the Court conditionally certifies the proposed collective action that includes all current and former non-managerial, non-exempt employees who are or were employed by Defendants as cook or wait staff. The Court declines to certify a collective that encompasses all non-exempt, non-managerial employees as overbroad based on the allegations in the Second Amended Complaint and Plaintiff's affidavit. See Wu, at 18-19 (denying conditional collective action certification for all non-exempt employees where Plaintiffs only put forth a factual showing to support inclusion in the collective of only specific categories of workers).

III.    **NOTICE AND CONSENT**

Once a court determines that Plaintiff has met its burden for initial collective action

certification, the court may grant court-authorized notice informing potential plaintiffs of their

opportunity to opt into the lawsuit.  Lynch, 491 F. Supp. 2d at 371.  The Supreme Court has held

that "court-supervised notice is the preferred method for managing the notification process for

several reasons: it avoids 'multiplicity of duplicative suits;' it allows the court to set deadlines to

advance the disposition of an action; it furthers the 'wisdom and necessity for early judicial

intervention' in multi-party actions; and it protects plaintiffs' claims from expiring under the

statute of limitations."  Id. at 367 (quoting Hoffmann-La Roche, 493 U.S. at 171-72).

"[T]he form and content of the notice . . . is to be approved by the [c]ourt prior to

mailing," in order to prevent "after-the-fact disputes between counsel" regarding the form and

manner of the notice and the opt-in plaintiffs' consent form.  Krueger v. New York Tel. Co., No.

93 Civ. 0178 (LMM), 1993 U.S. Dist. LEXIS 9988, 1993 WL 276058, at *3 (S.D.N.Y. July 21,

1993) (citing Hoffmann-La Roche, 493 U.S. at 170).  The content of the notice is left to the

broad discretion of the district court.  See Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d

317, 323 (S.D.N.Y. 2007) (citing Hoffmann-La Roche, 493 U.S. at 170, and stating that "[t]he

Supreme Court has abstained from reviewing the contents of a proposed notice under § 216(b),

noting that such 'details' should be left to the broad discretion of the trial court").

> A notice should include, at a minimum: the purpose of the notice, the nature of
> the lawsuit, the proposed class composition, the legal effect of joining the lawsuit,
> the fact that the court has not taken any position regarding the merits of the
> lawsuit, how to join the lawsuit, the purely voluntary nature of the decision and
> the legal effect of not joining the lawsuit, the prohibition against retaliation, and
> the relevant contact information for inquires.

Hernandez v. City of New York, No. 16 Civ. 3445 (RA), 2017 U.S. Dist. LEXIS 102285, at *26-

27, 2017 WL 289816 (S.D.N.Y. June 29, 2017).  When exercising discretion to craft notices in

collective action cases, courts in this District consider the overarching policies of the notice

provisions of Section 216(b), such as achieving judicial efficiency and lowering individual costs

for plaintiffs.  Fasanelli, 516 F. Supp. 2d at 323.  "These benefits 'depend on employees

receiving accurate and timely notice concerning the pendency of the collective action, so that

they can make informed decisions about whether to participate.'"  Id. (quoting Hoffmann-La

Roche, 493 U.S. at 170).


### A. Production of Contact Information

Plaintiff requests that the Court order Defendants to produce an Excel spreadsheet which

lists first and last name, nickname, gender, last known address, last known telephone number,

last known email address, social media handles (WhatsApp username, WeChat ID, and

Facebook usernames), work location, start date, end date, and position (i.e. title) for all potential

collective action members.  SeeECF No. 83-3, Proposed Order, at 1-2.  "Courts in this Circuit

have held that disclosure of employee contact information is relevant and appropriate in

connection with conditional collective action certification."  Tate., 2014 U.S. Dist. LEXIS 76162

at *6 (collecting cases).[19]  Plaintiff has failed to justify its request for production of potential

plaintiffs' gender and work location.  Gender has no bearing on where and how notice will be

---

[19] Plaintiff cites "Kiang v. Yummy Oriental Restaurant Inc., et al., No. 18 Civ. 5256 (SJF)(ARL),
at *7 (S.D.N.Y. July 1, 2019)," for the proposition that other courts have directed Defendants to
provide contact information or potential opt-in collective members, including WhatsApp,
WeChat ID, and/or Facebook usernames.  See Memo. of Law at 15.  The Court was initially
unable to find a case with opposing parties Kiang and Yummy Oriental Restaunt, Inc.  A more
thorough search located the case, or more accurately the case's docket sheet.  Kiang v. Yummy
Oriental Restaurant Inc., et al., is an Eastern District of New York case. The Court reminds
Plaintiff's counsel of its ethical and professional obligation to cite to legal authority properly.
See N.Y. R. Prof'l Conduct 3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement
of fact or law to a tribunal . . .").

delivered to the potential collective action members.  Further, Plaintiff's allegations support a collective that is limited to those non-exempt, non-managerial employees of Kicho Japanese Fusion who were employed at its Bedford Hills location.[20]  The Court directs Defendants to provide the names, addresses, telephone numbers, email addresses, and dates of employment of potential collective action members to Plaintiff's counsel within fourteen (14) days of the entry of this order.  If Defendants have other contact information for potential collective action members in their possession, including social media handles, Defendants must produce that information as well.

### B. Language of the Notice

Plaintiff requests that "all notices or posts to employees' attention be in English, Chinese, and Spanish" as the potential opt-in plaintiffs are primarily Chinese or Spanish speakers.  ECF No. 84, Memorandum of Law ("Memo.) at 22.  Translating the notice and consent forms will increase the notice's effectiveness in informing potential opt-in plaintiffs about this action.  For that reason, and as other courts in this circuit have granted similar requests, the Court grants Plaintiff's request to have the notices and postings be written in English, Chinese, and Spanish. See, e.g., Wu, 2019 U.S. Dist. LEXIS 127895, at *36 (citing Iriarte v. Cafe 71, Inc., No. 15 Civ. 3217 (CM), 2015 U.S. Dist. LEXIS 166945, at *14 (S.D.N.Y. Dec. 11, 2015)).

---

[20] Even though the Second Amended Complaint refers to a White Plains location, taking the pleading as a whole, the Court finds that Plaintiff's allegations relate to a single restaurant located in Bedford Hills.  The parties may file a letter clarifying this point if the Court is mistaken in how it reads the Second Amended Complaint.

### C. Exclusion of Defendants' Attorney Information

Plaintiff contends that it would be proper for the Court to exclude Defendants' attorney's contact information from the notice to potential collective action members.  Memo. of Law at 18. The Court agrees with other "[c]ourts in this Circuit[, which] have generally concluded" that the contact information of Defendants' counsel "is appropriate for inclusion in a notice of collective action."  Bittencourt, 310 F.R.D. at 118 (quoting Slamna v. Api Rest. Corp., No. 12 Civ.757 (RWS), 2013 U.S. Dist. LEXIS 93176, 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013) (citing cases)).  Courts in this district have often required that the contact information of counsel be set apart in two separate sections.  See Benavides, 166 F. Supp. 3d at 486-87 (finding inclusion of plaintiff and defendant's counsel's information appropriate and requiring the contact information to be set out in two separate sections); Mendoza, 2013 U.S. Dist. LEXIS 132777, , at *22 (approving notice that sets out plaintiff's and defendant's counsel's contact information in separate sections); Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (finding defendant's request to include defense counsel's contact information to be "reasonable," but requiring information to be placed in separate section entitled "Attorneys for Defendants").  Plaintiff's counsel is directed to include a separate section in the notice which lists the contact information for Defendants' counsel.

### D. Publication of Notice on Plaintiff's Counsel's Website

Plaintiff requests the Court's permission to publish the full opt-in notice on Plaintiff's counsel's website.  Memo. at 18-19.  Plaintiff cites one case to support its request, Varghese v. JP Morgan Chase & Co., 2016 U.S. Dist. LEXIS 122428, at *26, 2016 WL 4718413 (S.D.N.Y. Sept. 8, 2016).  Varghese, in turn, cites Mark v. Gawker Media LLC, No. 13 Civ. 4347 (AJN),

2014 U.S. Dist. LEXIS 155424, at *8-9, 2014 WL 5557489 (S.D.N.Y. Nov. 3, 2014).  Neither

<u>Varghese</u> nor <u>Mark</u> presented the question of whether the Court should allow Plaintiff's counsel

to post the opt-in notice on counsel's own website.  Although this case involves potential

plaintiffs who may be difficult to reach because they may no longer work at Defendants'

restaurant, or may have moved, or may have changed telephone numbers, the Court is not

convinced that posting the full opt-in notice on Plaintiff's counsel's website will increase the

likelihood that the notice will reach potential opt-in plaintiffs.  Plaintiff has not given the Court

any reason to believe that potential plaintiffs are likely to visit Plaintiff's counsel's website,

unprompted.  Nor has Plaintiff given the Court reason to believe that posting the opt-in notice on

Plaintiff's counsel's website  would reach potential plaintiffs in a way that mail, text, email, and

social media messages would not.  Therefore, Plaintiff's request to post the opt-in notice on

Plaintiff's counsel's website is denied.


### E. Conspicuous Posting at Defendants' Restaurant

Plaintiff requests that the Court order Defendants to post the notice and consent form at

conspicuous locations in Defendants' restaurant, Kicho Japanese Fusion, located at 352 Bedford

Hills, NY 10507.  Memo. at 19; Proposed Order at ¶ 7.  Other courts have approved requests for

posting notices in the workplace, and the undersigned agrees with its sister courts that "[p]osting

notice in the workplace maximizes potential plaintiffs' opportunities to be informed of the

pendency of the litigation and consider whether to opt in."  <u>Iriarte</u>, 2015 U.S. Dist. LEXIS

166945 at *16-17 (quoting <u>Mendoza</u> 2013 U.S. Dist. LEXIS 132777, at *29); <u>see also</u>,

<u>Whitehorn</u>, 767 F. Supp. 2d at 449.  Plaintiff's request that Defendants post the notice and

consent form in conspicuous locations at its restaurant is granted.

### F. Reminder Notice

Plaintiff seeks the Court's permission to "send a reminder mailing and email to all unresponsive collective action members half-way through the notice period." [21]  Memo. at 19. The Court is persuaded by the reasoning of other courts in this district which have granted reminder notice requests.  See, e.g., Chhab v. Darden Restaurants., Inc., No. 11 Civ. 8345 (NRB), 2013 U.S. Dist. LEXIS 135926, at *51, 2013 Wl 5308004 (S.D.N.Y. Sept. 20, 2013); Morris, 896 F. Supp. 2d at 274-275.  Plaintiff's request to send a reminder notice by mail and email to all potential collective action members who have not responded to the initial notice by the half-way point in the opt-in period is granted.

### G. Opt-In Period

Courts in this District routinely grant opt-in periods of 60-days after conditional certification in FLSA cases.  See, e.g., Hernandez, 2017 U.S. Dist. LEXIS 102285, at *35-36 ("Courts in the Second Circuit generally provide opt-in periods of 60 days").  Here, Plaintiff requests that the Court set the opt-in period at 90 days.  Memo. at 20.  "While some courts have granted up to 90 day opt-in periods, they generally do so where the period is agreed upon between the parties or special circumstances require an extended opt-in period."  Whitehorn, 767 F. Supp. 2d at 452.  Plaintiff has not offered a reason why a 90-day opt-in period is more appropriate in this case than a 60-day opt-in period.  Instead Plaintiff asserts that a 90-day opt-in period "will allow the greatest number of Plaintiffs to opt into the action" and that "[t]here is no

---

[21] In support of its position that a reminder notice should issue in this case, Plaintiff cited Gervasio v. Wawa Inc., No. 17 Civ. 245 (PGS), 2018 U.S. Dist. LEXIS 4899 (D.N.J. Jan. 11, 2018).  Memo. at 20.  Plaintiff's counsel should take greater care in preparing its filings before the Court as this citation was incomplete and, in particular, lacked any indication that this case was not only from outside the district but from outside the circuit.

detriment to plaintiffs from extending this period, and doing so will make it more likely that all employees who intend to bring such claims will do so in this action."  Memo. at 20-21.  The Court sees no special circumstances in this case to support adopting a 90-day opt-in period.  Accordingly, the Court finds that a 60-day opt-in period is sufficient.  Plaintiff's request for a 90-day opt-in period is denied.

### H. Notice Period

Plaintiff asks this Court to apply the FLSA's three-year statute of limitations period in this case because Plaintiff alleges in the Second Amended Complaintthat Defendants willfully violated the FLSA.  Memo. at 21-22.   Defendants have not answered the Second Amended Complaint and would be presumed to have admitted the allegations contained therein absent permission from the Court to file an answer after the allotted time has passed.  See Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  The Court assumes, without deciding, that Plaintiff's allegation of willfulness is deemed admitted.  Therefore, a three-year statute of limitations period is appropriate.  Even if Defendants were to dispute the willfulness allegation, the three-year statute of limitations period would still be appropriate in this case.  See Hamadou, 915 F. Supp. 2d at 668 (citing Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234, 240 (N.D.N.Y. 2002)) ("Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action.").

Plaintiff further asks the Court to set the "anchor date" for the notice period (i.e. the date from which the three-year statute of limitations period is applied) as the date of filing of the original complaint.  Memo. at 20.  Plaintiff asserts that "courts routinely calculate the notice

period from the date on which the lawsuit was filed, not the date of conditional certification . . ."
Id. (quoting Yuan v. & Hair Lounge, et al., No. 18 Civ. 11905 (AT)(BCM), Docket No. 70 at *
17 (S.D.N.Y. Nov. 7, 2019)).[22]  "Notice would normally be provided to those employed within
three years of the date of the notice."  Hamadou, 915 F. Supp. 2d at 668 (emphasis added).
"However, because equitable tolling issues often arise for prospective plaintiffs, courts
frequently permit notice to be keyed to the three-year period prior to the filing of the complaint,
'with the understanding that challenges to the timeliness of individual plaintiffs' actions will be
entertained at a later date.'"  Hamadou, 915 F. Supp. 2d at 668 (quoting Winfield v. Citibank,
N.A., 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012)).  In this case, even though the Court will deny
Plaintiff's request for equitable tolling through the close of the opt-in period, see "Equitable
Tolling" infra, the Court agrees with other courts in this Circuit that the three-year period for
notice purposes should be counted from the date of the filing of the complaint.  Therefore,
Plaintiff's request that the "anchor date" for notice be set at the filing of the complaint is granted;
the notice shall be sent to all potential plaintiff's who worked at Kicho Japanese Fusion from
August 15, 2015,[23] to the present.

---

[22] The Court was unable to locate the Yuan decision cited via the LexisNexis or WestLaw legal
search engines.  The Court was able to find the decision by searching the electronic docket sheet
for Southern District of New York case number 18-cv-11905.  The appropriate docket number
for the decision has been added to Plaintiff's case citation for ease of reference.  In future, parties
citing to decisions which do not appear on the standard legal search engines should include both
the case number and the docket number in its citation (in addition to the case name, court, page
number, and date).

[23] The original complaint in this case was filed on August 15, 2018.  ECF No. 1, Complaint.
Since the Second Amended Complaint does not add to the FLSA allegations contained in the
original complaint, except to add a Defendant, Lian .Corp., as an alleged violator, the Court finds
that the date of filing of the original complaint is most appropriate for calculating the notice
"anchor date."

**I. Equitable Tolling**

Plaintiff requests that the Court toll the limitations period "for 90 days until the expiration of the Opt-In Period."[24]  Memo. at 23.  The Supreme Court has held that "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Contrera v. Langer, 278 F. Supp. 3d 702, 723 (S.D.N.Y. 2017) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  "The Second Circuit has repeatedly cautioned that 'equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances.'"  Id. (quoting A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 144 (2d Cir. 2011) (internal quotation marks and alterations omitted); accord Phillips v. Generations Family Health Ctr., 723 F.3d 144, 150 (2d Cir. 2013) (quoting A.Q.C. ex rel. Castillo, 656 F.3d at 144); Bertin v. United States, 478 F.3d 489, 494 n. 3 (2d Cir. 2007) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam)).  Thus, "[w]hen a movant does not provide any grounds showing equitable tolling may be appropriate, it will not be applied."  Contrera, 278 F. Supp. 3d at 723 (quoting Mark, 2014 U.S. Dist. LEXIS 155424, at *5 (S.D.N.Y. Nov. 3, 2004)) (citing Ouedraogo v. A-1 Int'l Courier Serv., Inc., No. 12Civ. 5651 (AJN), 2013 U.S. Dist. LEXIS 96091, 2013 WL 3466810, at *4 (S.D.N.Y. July 8, 2013)).  Several courts in this District have applied the equitable tolling doctrine strictly in conditional collective action certification cases.  See, e.g., Ting Qui Qui, v. Shanghai Cuisine, Inc., No. 18 Civ. 5448 (ER), 2019 U.S. Dist. LEXIS 198794, at *13, 2019 WL 6002371 (S.D.N.Y. Nov. 14, 2019); cf. Wu, 2019 U.S. Dist. LEXIS 127895, at *33-35.

---

[24] It is unclear from Plaintiff's phrasing of the request exactly how much time should be tolled. The Court considers Plaintiff's request to be for equitable tolling through the conclusion of the opt-in period.

Here, Plaintiff has not demonstrated that extraordinary circumstances exist in this case to warrant equitable tolling.  Plaintiff's stated reason for the request is concern about unnecessary delays as the FLSA limitations period continues to run until a potential plaintiff optsinto the case. Memo. at 23.  This concern is not extraordinary; rather, it is a common issue present in litigation. Therefore, Plaintiff's request for equitable tolling is denied without prejudice to the issue being raised in the future by an opt-in plaintiff.

### J. Consent Forms Returnable to Plaintiff's Counsel

In light of the intra-Circuit split on whether notices should direct potential opt-in plaintiffs to return consent forms to Plaintiff's counsel or to the Clerk of the Court, [25] and the fact

---

[25] Compare, e.g., Nahar, 2015 U.S. Dist. LEXIS 143839, at *18 (finding a process whereby opt-in forms are returned to the Clerk of Court "unnecessary and . . . burdensome to the Court"); Whorley v. Jonrocman 930, LLC, No. 14 Civ. 1239 (PKC), 2015 U.S. Dist. LEXIS 76580, 2015 WL 3609152, at *4 (S.D.N.Y. June 8, 2015) (directing counsel to "remove the clause that allows consent forms to be received by the Clerk of the Court."); Fonseca v. Dircksen & Talleyrand Inc., No. 13 Civ.5124 (AT), 2014 U.S. Dist. LEXIS 52744, 2014 WL 1487279, at *5 (S.D.N.Y. Apr. 11, 2014) (opt-in forms should be returned to plaintiffs' counsel to reduce the burden on opt-in plaintiffs and the court); with, e.g., Gomez v. Terri Vegetarian LLC, No. 17 Civ. 213 (JMF), 2017 U.S. Dist. LEXIS 93191, 2017 WL 2628880, at *3 (S.D.N.Y. June 16, 2017) ("To avoid disputes over timeliness, potential opt-in plaintiffs shall be required to send their consent forms directly to the Clerk of Court rather than to Plaintiff's counsel."); Hernandez v. Fresh Diet Inc., 2012 U.S. Dist. LEXIS 169332, 2012 WL 5936292, at *9 (S.D.N.Y. Nov. 21, 2012) (consent forms must be submitted to the Clerk of Court to avoid discouraging opt-in plaintiffs from retaining their own counsel); Brabham v. Mega Tempering & Glass Corp., No. 13 Civ. 54 (JG), 2013 U.S. Dist. LEXIS 93897, 2013 WL 3357722, at *7 (E.D.N.Y. July 3, 2013) (ordering that opt-in forms be returned to the Court as the alternative approach could "discourage[ ] potential opt-in plaintiffs from seeking outside counsel" and delay tolling of the statute of limitations).  See also Martin, 2016 U.S. Dist. LEXIS 352, at *56 (noting this split but also stating that "[t]he majority of courts, however, have directed opt-in plaintiffs to mail the consent forms to plaintiffs' counsel") (collecting cases); She Jian Guo v. Tommy's Sushi Inc., No. 14 Civ. 3964 (PAE), 2014 U.S. Dist. LEXIS 147981, 2014 WL 5314822, at *12-13 (S.D.N.Y. Oct. 16, 2014) (stating the same and that "[d]oing so is particularly appropriate here because the Notice explicitly advises potential opt-in plaintiffs that they may consult or retain another attorney . . . mitigating concerns that putative class members may be discouraged from retaining their own counsel"); Delaney v. Geisha NYC, LLC, 261 F.R.D. 55, 60 (S.D.N.Y. 2009)

that Plaintiff's motion to approve the notice is unopposed, the Court will allow consent forms to be returned to Plaintiff's counsel.  Plaintiff's counsel shall file the returned consent forms under seal within five (5) days of receipt.  See Morris, 896 F. Supp. 2d at 274 (ordering that the consent forms be returned to plaintiff's counsel, who must then file redacted copies of the forms with the Clerk of the Court within five days of receipt).  Plaintiff's counsel should consult the undersigned's individual rules concerning filing documents under seal.  The sealed filing should include a declaration or affirmation from Plaintiff's counsel indicating the date each form was received and a copy of the envelope.  The consent form must be modified to provide an option for potential opt-in plaintiffs to indicate whether they agree to be represented by Plaintiffs' counsel, will retain separate counsel, or will represent themselves.

### K. Other Requests

Plaintiff's remaining requests are denied for lack of argument in support thereof. Plaintiff requested that Defendants be required to cover the costs of re-mailing notices or of newspaper publication in the event that Defendants fail to provide the contact information for potential plaintiffs or if more than 20 percent of notices are returned as undeliverable.  See ECF No. 82, Notice of Motion at ¶ 8. Plaintiff has not addressed why the Court should grant this request at this stage in the notice process.  The Court finds this request to be premature and reserves judgment on these issues until they have materialized.  Plaintiff's request is denied without prejudice to renewing its request should future circumstances so warrant.  Plaintiff requested permission to post a short-form of the notice on social media pages targeting the Chinese-speaking and Spanish-speaking immigrant worker communities, see Notice of Motion

---

("Because the notice states that opt-in plaintiffs can select their own counsel, there is only a minimal risk that opt-in plaintiffs will be discouraged from seeking their own counsel.").

and Proposed Order, but failed to addres this request in its Memorandum of Law or provide the

Court with a copy of the short-form notice.  In the absence of a rationale for posting the notice on

an undisclosed website where it would be seen by likely many more people than the potential

opt-in plaintiffs, which might cause confusion, and in the absence of a copy of the short-form

notice for the Court to review, Plaintiff's request is denied.


### L. Court-Directed Changes to the Notice and Consent

Except for the changes discussed above, the Court approves of the notice and consent

forms with the following changes.

***Notice Page One***

Plaintiff should remove all references to NYLL claims or a Rule 23 class throughout the

notice.  Plaintiff has not sought class certification under Federal Rule of Civil Procedure 23 for

the state law claims, and indeed informed the Court that it did not intend to pursue Rule 23 class

certification.  See ECF No. 31, Order.  Because the notice encompasses only the FLSA claims,

Plaintiffs are to remove any reference to the pending NYLL claims.  See McBeth v. Gabrielli

Truck Sales, Ltd., 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011) ("[S]ince the notice period will not

encompass any state law claims, there is no reason to include reference to the pending state law

claims in the Notice of Pendency.").

The scope of the collective as described in the notice[26] should be changed to reflect this

Court's decision: the collective action includes all current and former non-managerial, non-

---

[26] The notice describes the collective as "[c]urrent and former non-exempt employees employed
at any time from August 15, 2015 to the present by [Defendants]" and as "all other current and
former employees who have worked for Defendants at any time since August 15, 2015."  ECF
No. 83-2, Notice of Pendency at 1.  As discussed above, these descriptions of the collective are
overly broad considering the allegations in the Second Amended Complaint and Plaintiff's
affidavit.  Neither of these definitions of the collective match that offered in the Second

exempt, cook and wait staff employees who worked at Kicho Japanese Fusion on or after August 15, 2015.  The "To" section, for example, is overly broad as it suggests that all current and former employees of Defendant Kicho Corp., Defendant Lian Corp., and Defendant Jin Chun are appropriate recipients of the notice.

### Notice Page Two

Plaintiff should add the text of Section 12 (page four of the notice) to the first full paragraph on this page which begins "No determination has been made . . ."  "*United States District Court for the*" [27] should be added before "Southern District of New York."  "Lawsuit" in the last sentence of Section 12 should not be capitalized.

The box titled "Your Legal Rights And Options In This Lawsuit" should be edited to read: (1)  "As To Be Included" –"If you wish to be included in this lawsuit, you must complete the *"Consent to Join Lawsuit" form at the end of this Notice and return it to Plaintiff's counsel by mail, email, or fax by [60 days from the date of mailing the notice].  By joining this lawsuit, you will be bound by any decision or order of the Court or agreement among the parties made in this case, and you may be entitled to share in a settlement or money judgment if either is reached in this case*;" and (2) "Do Nothing"—"By doing nothing, you will not be included in *this lawsuit. You will not be bound by any decision or order of the Court in this case or by any settlement agreement if reached.  You would not be entitled to share in a settlement or money judgment achieved in this case, if any*."

Section 02 should be edited to remove references to the NYLL.  It should read "This lawsuit is about whether the Defendants properly paid its employees in accordance with federal

---

Amended Complaint or in Plaintiff's Memorandum of Law in Support of its Motion for Collective Action Certification.

[27] Italics indicate language that has been added by the Court.

law.  The lawsuit alleges that Defendants failed to pay its employees overtime wages for all hours worked over 40 *hours*.  Defendants deny these allegations."

Section 04 should be edited to (1) modify the language suggesting that opt-in plaintiffs would be designating the named Plaintiff as their representative to inform potential plaintiffs that they <u>may</u> designate Plaintiff as their representative, (2) replace "You will also share" with "*You may also share*," and (3) add "*achieved in this case*" to the end of the second sentence of Section 04.

### *Notice Page Three*

Plaintiff should add to first full paragraph: "*You may be asked to sit for a deposition or to testify at trial even if you decide not to join this lawsuit*."

Section 05's heading should be edited to add "*against me*" between "retaliate" and "or." Plaintiff should add to text of this section that it is also a violation for the potential plaintiff's current employer to discriminate or retaliate against him or her for participating in this lawsuit.

Section 06's heading should be edited to remove the first comma.

Section 07 should be edited to reflect the following changes.  "Plaintiff Consent Form" in paragraph one, sentence one, should be changed to "*Consent to Join Lawsuit*."  The second sentence of paragraph one should end with the phrase "*as directed*."  The first sentence of the second paragraph should read: "*A pre-addressed, postage-paid* envelope is enclosed for your convenience."  The last sentence of this section, beginning with "You can also fax . . ." should be moved to just before the sentence beginning with "The signed Consent . . ."  In the sentence beginning "If your Consent . . ." the final word "damage" should be changed to "*award*."

Section 08 and Section 09 should be combined into one section titled "*Do I need a lawyer?*"  This section should begin with an acknowledgment that potential plaintiffs have a

right to hire their own attorneys to represent them in this case (or represent themselves), and then state that potential plaintiffs have the option of consenting to be represented by named Plaintiff's counsel.  This section should also note that if potential plaintiffs wish to join the case, they must return the consent form to named Plaintiff's counsel by the deadline stated in the notice whether or not they decide to retain separate counsel.  This section should indicate that the Consent to Join Lawsuit form will have a space for potential plaintiffs to indicate their choice of counsel. "Counsel" in "Plaintiff's counsel" should not be capitalized; "Plaintiffs'" should be in the singular possessive and not the plural possessive.  The discussion of legal fees for separately retained counsel should be moved to Section 10 on page four of the notice.

### Notice Page Four

Section 10 should be edited to include the sentence regarding separately retained counsel from Section 09 and to direct potential plaintiffs to send all consent forms to Plaintiff's counsel, whether or not the potential plaintiff chooses to retain his or her own attorney.

Section 11 should edited to read "*If you do nothing, you will not be joined in this lawsuit. You will not be affected by any settlement or judgment rendered in this case, whether favorable or unfavorable.*"

### Consent to Join Lawsuit

The consent form's directions under section "B" should be changed to indicate that potential plaintiffs may return this form to Plaintiff's counsel by mail using the enclosed envelope, by fax, or by email.  The consent form should be changed to provide an option for potential plaintiffs to indicate their choice to retain separate counsel or proceed pro se. Collective action certification under § 216(b) of the FLSA is essenatially a joinder rule; therefore, each opt-in plaintiff will become a party plaintiff.  See 29 U.S.C. § 216(b); cf.

Pettenato v. Beacon Health Options, Inc., 19 Civ. 1646 (JPO)(BCM), 2019 U.S. Dist. LEXIS 187691, at *25-26, 2019 WL 5587335 (S.D.N.Y. Oct. 25, 2019) ("Every plaintiff who opts in to a collective action has party status. . . Indeed '[a] collective action is more accurately described as a mass tort action, in which aggrieved workers act as a collective of <u>individual</u> plaintiffs with <u>individual</u> cases.'") (emphasis in original). For that reason, the consent should indicate that opt-in plaintiffs need not consent to designate the named Plaintiff as their representative in order to join the lawsuit. The second and third lines of section "2" are confusing as written and should be edited to read: "*I understand that if I consent to be represented by the Firm in this matter, and if this case results in a settlement or a money judgment, the Firm will petition the Court for reasonable attorneys' fees and costs. If granted, the Court will determine the amount of fees and costs to award to the Firm, and that amount will be taken from the gross amount of any settlement or money judgment received before it is divided among the plaintiffs who are entitled to share in that settlement or judgment, which may or may not include me.*" By agreeing to join this lawsuit, opt-in plaintiffs will be bound by any decision, order, or judgment in this case whether or not they agree to be bound. Therefore, the final sentence of section "2" should read "*I understand that by consenting to join this lawsuit I will be* bound by any adjudication of this action by this Court, whether it is favorable or unfavorable." On the second page of the consent form, "Start Date" and "End Date" should each be followed by "at Kicho Japanese Fusion."

Plaintiff will be authorized to disseminate the updated notice and consent form once it has been reviewed by the Court.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for conditional collective action certification is **GRANTED IN PART AND DENIED IN PART**. The Court grants conditional collective

action certification for all non-managerial, non-exempt employees, who worked as cook or wait

staff at Kicho Japanese Fusion on or after August 15, 2015, finding that Plaintiff has made the

factual showing required to infer that these employees were subject to a common policy or plan

that violated the law.  The Court directs Plaintiff to revise the notice and consent form, consistent

with this Decision and Order, to confer with Defendants in order to agree on a final version of

each form, and to submit final versions (as well as any translations) for the Court's approval no

later than **fourteen (14) days after the entry of this order**.  Defendants are directed to provide

Plaintiff's counsel with the names, addresses, telephone numbers, social media handles, and

dates of employment for all potential plaintiffs by the same date. The Court directs Defendants to

post the notice and consent forms, in English, Chinese, and Spanish, in  conspicuous locations at

Kicho Japanese Fusion, located at 352 Bedford Rd., Bedford Hills, NY 10507.  Such notice is to

remain posted throughout the opt-in period.  Plaintiff must file the returned consent forms under

seal within five days of receipt.  The Court will not toll the statute of limitations at this time.  The

Clerk of the Court is directed to terminate the motions at ECF Nos. 37 and 82.


Dated:  April 17, 2020
       White Plains, New York

                                      **SO ORDERED,**

                                        _____
                                        Hon. Lisa Margaret Smith
                                        United States Magistrate Judge
                                        Southern District of New York